The next case to be argued this morning is Cline v. Touchtunes Music Corporation, number 18, 1756. Thank you. Good morning, Your Honors. May it please the Court, I'm Jeffrey Norton for the appellant. Excuse me, Mr. Norton, could you move over and speak into the microphone? Thank you. Thank you. I apologize. So, Jeffrey Norton for the appellant, thank you very much. While we understand that the District Court has considerable discretion in fee awards concerning class action settlements, that discretion must still be guided by Rule 23, an established Second Circuit precedent. Here, following four years of litigation, the Court was presented with a settlement specifically tailored to resolve the remaining claims in that action, shaped by the Court, and it found that that settlement was fair, reasonable, and adequate. However, when presented with an uncontested, modest, negative multiplier fee request that was negotiated independent from and was independent from any benefits to the class, did not reduce benefits to the class, the District Court completely abandoned its role as a fiduciary for the class under Rule 23 and departed from clear authority in this circuit. It substituted its own business judgment for that of the parties. It concerned itself with the interests of corporations and the defendant in particular. It disregarded the Goldberg factors. On what basis do you make that claim, that it concerned itself with the interests of corporations? Doesn't the District Court have the discretion in a fund case to use Lodestar or the fund created and to award a reasonable fees, and it exercised that discretion in assessing how best to calculate an award? Why do you say it was kind of expressing a predilection towards protecting corporate interests? Well, Judge Kaplan specifically said that he viewed this action as a nuisance action, that it was a squeegee-man theory of fees, and that it was a tax on corporations, and he wasn't going to allow that. So he expressed a view that the case itself wasn't worth very much in terms of public interest for the class and so on. He did express that opinion, but bear in mind this case was much broader, much more complex at its outset. It went on through multiple pleadings. That was Judge Kaplan's point, that it just kept shrinking as parts of the case became less and less tenable. Correct, Your Honor. So here we are. I'm not sure it helps you to argue, well, it was a bigger case when it started, because as it emerged, it should never have been that big a case. That was his point anyway. Respectfully, Your Honor, looking at the Goldberg factors and the complexities of the matter, the complexities are viewed from the outset. How was this case constituted originally? Now, we took a— Consider whether it was made more complex than it needed to be by counsel, and that would warrant a discount in the fees if the counsel made it more complex than was warranted. No, Your Honor. At no time in the four years of litigation did Judge Kaplan once express the opinion that this case lacked merit, was a nuisance case, that it was— He was looking at it in the light most favorable to one side or the other as the law required, and it was only after the merits were resolved through the settlement that he expressed the views he did about what had happened in the litigation. But throughout the litigation, he focused on the merits of the party's claims. Right. So we were left in a position. We had a meritorious claim, a smaller class, and we did the prudent— our choices were to walk away from a claim that was deemed meritorious, litigate that claim to some great extent, an expense, or resolve the claims that the court expressly left viable. And we did the prudent thing on behalf of the class, and we came up with a settlement that was specifically tailored to address what was left of the class. In fact, we ended up getting more relief than we probably could have at trial on that particular claim. And Judge Kaplan also disregarded, in addition to the benefits that we achieved that he valued, he didn't give any value to the structural and non-quantifiable benefits at all. He didn't even refer to them in his orders. You mean the change in the disclaimer? The change in the disclaimer, which was specifically his point in sustaining the 349 claim, was that the company failed to disclose the ability to skip songs at venues. But the disclaimer was already in place that there would be no refund under any circumstances, right? That was preexisting the suit. There was a disclaimer by the defendant. They had the disclaimer, but it wasn't a fulsome disclaimer about this particular matter, which the court said was still deceptive. Let me ask you a question. With regard to the debate over whether the award should have been based on the amount of, how to say this, not the actual redemption rate, but the overall kind of pool created that was redeemed, I was looking at CAFA and seeing its provisions regarding coupon settlements, which this seems to be. All users of the jukebox system were entitled then to a credit, and only a certain percentage, which Judge Kaplan thought would be relatively small, might redeem those coupons. And so CAFA seems to, in 28 U.S.C. 1712a, anticipate similar settlements where only partial redemption actually occurs. Do you disagree that that part of CAFA governs this settlement? We think this case is a little bit of a different animal, not necessarily a coupon settlement, because basically it was a reversion of, I think people lost a particular unit of value, and they received back a particular unit of value, unlike the coupon, which could be unrelated to the original loss. Here, they received back exactly what they lost, in addition to other non-quantifiable benefits. Nonetheless, they're getting an opportunity to use the system that is, in my view, equivalent to the kind of coupon that may or may not be used ultimately. It's not like there's money that's getting distributed to everyone, right? That's true. There's not money being distributed to everyone. In this case, I mean, I think the Second Circuit President is fairly clear on this point, that it went even further than basing it on whether or not people got that credit or made a claim for that credit. It was irrelevant to the district court. It's whether they ultimately used it, and we don't think that's particularly fair, or supported by the Second Circuit President, by Ben Gamert or others. I think you preserve three minutes for rebuttal. We'll hear from Mr. Palmore. Thank you, Your Honors. I may please the Court. I'm Joseph Palmore here on behalf of Touchtoons. Judge Kaplan acted well within his broad discretion in directly correlating counsel's fees to the concrete benefit that the settlement provided to the class. This practical approach was particularly warranted because counsel failed to fulfill his mandatory obligation under Cary to substantiate his billable time in support of a lodestar. Let me ask you about that. I mean, I gather that contemporaneous billing records weren't provided, and the initial application was kind of summary, but counsel seemed to have offered to provide contemporaneous billing records for the courts in camera examination. Why wasn't it an abuse of discretion for the district court to reject that offer? Because that was insufficient. It was too little too late, Your Honor. Since 1983 and the Cary decision, it has been mandatory in this circuit for counsel seeking lodestar compensation to provide billable records. That's the threshold requirement. This was the final confirmation hearing. It had been scheduled months in advance. Counsel was required to support his request for fees with those billable records, and it wasn't sufficient for him to say, I will comply with this mandatory obligation at some later date, and it's not correct for him to say that Judge Kaplan abused his discretion by declining to adjourn the final confirmation hearing in order to allow counsel to do what he was supposed to do from the beginning. It couldn't be clearer under Cary, under Scott, that this is a mandatory hard and fast rule, and if you look at what counsel provided, it was simply a summary table. It's about two inches tall in his fee application, just with a gross aggregate number of hours and a fee, and that's not sufficient. So lodestar was off the table as an option here. Judge Kaplan then had no choice if he was going to award fees at all, but to award them in relation to the benefits that were provided under the settlement. Do you agree that the CAFA coupon provision that I was referring to earlier could be looked to as governing the redemption or no redemption provision aspect of the order? Yes, Your Honor. It could definitely be looked to. At the very least, it's a very sound analogy. It's an equivalent to the coupons under CAFA are equivalent to the credits applied here. Of course, it's not just CAFA, the complex litigation manual which we cite in our brief. There was actually a recent amendment to the advisory committee notes under Rule 23 that expressly endorsed this kind of calculation of fees, waiting until you see what the actual redemption rate is, so that the fees are correlated to the actual concrete benefits that are provided to the class. Of course, numerous district courts in this circuit, and we cite those in footnote two of our brief, have calculated fees in exactly this way. It's a very practical way of ensuring that there's a correlation between the fee paid to counsel and the concrete actual benefits provided to the class, not just the theoretical benefits. Judge Kaplan couldn't have abused his discretion by using that very method that's been endorsed through all of those mechanisms and is, in fact, the only way to calculate fees in a coupon settlement under CAFA. In terms of the complexity of the case, Judge Raja, you pointed out something that's quite apt here, which is that the case was unnecessarily complex from the beginning. There was a sua sponte dismissal for failure to allege jurisdiction properly. We had to move to dismiss twice. It was dismissed in its entirety the first time with leave to replead. It was dismissed almost in its entirety the second time, as counsel acknowledged. Only a sliver of the case was left, so it was actually quite simple at the end of the day. In terms of the effort that counsel expended over the life of the case, it was really filing complaints, resisting motions to dismiss, and amending the complaints. There was no discovery. There was no actual fact litigation in this case, and the parties arrived at a reasonable compromise and settlement to reflect the sliver of the case that was left and to provide relief to the class that was commensurate with that sliver of the case. The fee award that Judge Kaplan awarded, and I should note parenthetically here that we don't even know what that final number is going to be because we're still within the period in which members of the class can redeem these credits, that fee award was commensurate to the concrete benefits that the class got. Your adversary suggests that the district court ran afoul of his or didn't fulfill his fiduciary obligation to the class and not awarding fees and costs and so on as had been anticipated in the settlement agreement. What's your comment on that? No, I think that's not correct, Your Honor. What Rule 23H says is that all fee awards and class actions have to be reasonable. It doesn't differentiate on whether the money comes from the class or comes directly from the defendant. This overarching reasonableness requirement always applies, and there is a systemic interest in having district courts do what Judge Kaplan did here, which is police the reasonableness of fees even if they're not contested in the district court. That is part of the district court's fiduciary obligation not only to the class in a particular case, but to the system and the fairness of class action litigation overall. As I understand it, you all agreed to pay a larger amount than the district court ultimately awarded. Is that correct? That's not quite correct, Your Honor. We agreed in the district court not to oppose. We didn't endorse. We didn't agree. We just said we will not oppose up to $100,000. And whatever amount was awarded, it was not going to diminish the amount or the recovery for the class, correct? That's correct, Your Honor. If the court has no further questions, we would ask that the judgment be affirmed. Mr. Norton, three minutes. With regard to the Lodestar summaries, Lodestar summaries like that are routinely included in fee applications. Let me ask you, though. Is it correct that the Lodestar summaries did not apply the billing rates in effect at the time the services were rendered? Your Honor, on that? Is that correct? That's correct, but the Second Circuit precedent, and there are a number of cases that say that current rates is the proper rate to use because it contemplates the risk and the time. Doesn't it depend on how the extent of the time and so on? And I think it would have been appropriate still to provide the then applicable rate rather than the highest rate applicable during the period, no? Perhaps, Your Honor. But, again, twice we offered to produce the records, both in our application . . . Counsel is right. That's no new requirement. It's not new, but there are dozens and dozens of cases where summaries, just like the one we did, where fees are granted and the only time, you know, often if there's objections or there's some question as to excessive billing or some other reason to doubt the veracity of the summary contained in the attorney declaration that would require that to . . . I remember seeing that when I was on the district court, and especially in a class action where the judge has specific fiduciary obligations, as you've pointed out. But just tell us why. Why didn't you provide them? I mean, there's plenty of case law out there saying they are required. Your Honor, I suppose it was based on former practice where it had been accepted the way we had done it. That's right. Now, if you're at the final proceeding and the judge is not going to let you delay things further, why is that an abuse of discretion? He didn't have to delay things. He could have been subject. He could have granted it subject to supplementing the record. That happens all the time as well. There was no reason for him to just throw that out. Really? Well, I think that his . . . I don't think that that's exactly what judges wouldn't do because they're basing it on nothing. I mean, they need to review the contemporaneous records to be certain that they're reasonable. Your Honor, here we have . . . So let's put aside the granted subject to confirming that it's okay. What makes you say that it's an abuse of discretion for a judge who has not offered contemporaneous billing records until the final appearance that that's an abuse of discretion? What do you rely on for that? It wasn't the final appearance because we had . . . He had had our motion for fees for two months, and Judge Kaplan had never been shy about telling us to supplement anything that we had submitted to the court within minutes of submitting it. When was the first time you offered to supply your records? Because that's what I was . . . Two months prior to the final approval hearing. When did you do that, and what submission so that I don't overlook . . . That was the motion for approval of fees. Where the summaries were contained . . . So you submitted your summaries, and therein you said what? And therein we said this summary is all based on the firm's contemporaneous time records, and they will be provided at the court's request for review. And then we repeated that again in open court, and that was disregarded. And I would just point out that in a case like this where the fees are agreed to, and they could say they weren't going to oppose, but that's just semantics, that the fees are agreed to, the benefit doesn't reduce any benefit to the class. Case law in this circuit is clear that the court's fiduciary role is greatly diminished because the reason for scrutinizing those fees is because the court acts as a fiduciary for the class, and there's no conflict of interest. Where . . . Doesn't the court have the authority, though, to choose between a fund approach and a lodestar approach in a class action such as this? It does, and we actually think that the lodestar approach was probably the better approach here, and we submitted a lodestar request that was negative .47 of our billable time. We cut over more than half of our time in this case in contemplation, in consideration that, yes, this was a far more narrow case. Ultimately, after expenses, which I didn't address, he also just for no reason didn't allow expenses or an incentive award without giving any real reason for that. But at the end of the day, it was basically an $87,000 fee over four years of litigation, like I said, cut in half. So even as a percentage of the benefit, depending on how you calculate it, we think that could still be justified. All right. Thank you. All right. Thank you very much. Thank you both.